UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
COSCO BULK CARRIERS CO., LTD.        :        08 CV _____

                                    :

           Plaintiff,           :

                                      :

    - against -           :

                                    :

AGRENCO MADEIRA COMERCIO       :
INTERNACIONAL LTD. a/k/a AGRENCO    :
MADEIRA COMERCIO INTERNACIONAL LDA:

                                    :

           Defendant.      :
--------------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, COSCO BULK CARRIERS CO., LTD. (hereinafter "Cosco" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, AGRENCO MADEIRA COMERCIO INTERNACIONAL LTD. a/k/a AGRENCO MADEIRA COMERCIO INTERNACIONAL LDA (hereinafter "Agrenco" or "Defendant") alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under the laws of the People's Republic of China.

3.     Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a place of business located at Avenida do Infante, 50 Funchal, 9004-521, Ilha da Madeira, Portugal.

4.    At all times material to this action, Plaintiff was the owner of the motor vessel "FEARLESS I" (hereinafter "the Vessel").

5.    By a charter party dated February 20, 2008 (hereinafter "the charter party"), Plaintiff voyage chartered the Vessel[1] to Defendant for a one time charter trip for the carriage of 55,000 metric tons (10% more or less in Owners option) of bulk soyabeans to be loaded at one safe port South Brazil to the discharging port of one safe port North China, North of Shanghai (intention Dalian). *A copy of the charter party is attached hereto as Exhibit "1"*.

6.    Plaintiff delivered the Vessel into the service of Defendant and has at all times fully performed its duties and obligations under the charter party.

7.    The charter party provided for freight payment at the rate of $109.75 per metric ton. *See Exhibit 1.*

8.    The Vessel completed its voyage under the charter party.  Upon completion, Defendant owned Plaintiff gross freight for the carriage of 59,159.26 metric tons of cargo at the rate of $109.75 per metric ton.  From this gross total, Plaintiff deducted credits due to Defendant under the charter party, including address commission[2], despatch,[3] and payments previously remitted. After all deductions allowable under the charter party, Defendants owned to Plaintiff freight in the total amount of $163,712.14.  On July 1, 2008, Plaintiff sent Defendant a freight invoice requesting payment of this outstanding sum. *A copy of this freight invoice is attached hereto as Exhibit 2.*

9.    Despite due demand, Defendant has failed and/or refused to remit outstanding freight due and owing to Plaintiff under the charter party in the total amount of $163,712.14.

---

[1] The charter party named the performing vessel as "MV COSBULK TBN" ("to be nominated").  Plaintiff later nominated the Vessel to perform under the charter party, which nomination Defendant confirmed.
[2] Address commission is a type of commission paid in a charter party.  It is a rebate from the vessel owner to charterer which is either paid to a broker or retained by the charterer.
[3] Despatch is compensation paid by ship owner to charterer as a 'reward' when the latter is able to complete the cargo operations in less time than the laytime allowed.

10.    Defendant has breached the terms of the charter party by refusing and/or failing to pay outstanding freight payments due and owing to Plaintiff under the terms of the charter party.

11.    Pursuant to the charter party, disputes between the parties are to be submitted to arbitration in London with English law to apply. Plaintiff will commence arbitration after the commencement of this action and jurisdiction is obtained over Defendant.

12.    This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of London arbitration proceedings.

13.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

14.    As best as can now may be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| a. | Principal Claim: | $ 163,712.14 |
| | *Outstanding freight* | |
| b. | Interest for 2 years, compounded quarterly at 7% | $ 24,373.73 |
| c. | Estimated arbitration costs: | $ 8,100.00 |
| d. | Estimated recoverable legal fees and costs: | $ 58,000.00 |
| **Total:** | | **$254,185.87** |

15.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit 3.*

16.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any proeprty of the Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount **$254,185.87** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.    That this Court enter Judgment against Defendant on the claims set forth herein;

E.    That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.    That this Court award Plaintiff its attorney's fees and costs of this action; and

G.    That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: July 31, 2008
       New York, NY

The Plaintiff,
COSCO BULK CARRIERS CO., LTD.

By: _Anne C. LeVasseur_

Patrick F. Lennon
Anne C. LeVasseur
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
pfl@lenmur.com
acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York )
                )    ss.:    City of New York
County of New York )

1.     My name is Anne C. LeVasseur.

2.     I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.     I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.     I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information and

belief.

5.     The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.     The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents and/or

representatives of the Plaintiff.

7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated:     New York, NY
           July 31, 2008

                             _Anne C. LeVasseur_
                             Anne C. LeVasseur

EXHIBIT 1

**(ADAPTED FROM "SYNACOMEX 90")**
**REVISED JANUARY 1999**

| | |
|---|---|
| Date | 20th February 2008 |
| Place | Singapore |
| Owner | 1.     It is this day agreed between **COSCO BULK CARRIERS CO, LTD TIANJIN**, as disponent Owner. |
| Vessel | **Performing Vessel: MV COSBULK TBN**<br>**Owners to nominate performing vessel 12 days prior ETA loading port and Charterers have 1 working day to confirm Owners' nomination which not to be unreasonably withheld.** |
| Charterers | **AGRENCO MADEIRA COMERCIO INTERNACIONAL LTD** |
| Loading Port(s) | 2.     That the said vessel being tight, staunch and fit for the voyage, shall with all convenient speed proceed to:<br>**1-2 safe berth(s)/ safe anchorage(s), 1 safe port South Brazil.**<br><br>Charterers to guarantee **M/V COSBULK TBN** as described to be fully workable suitable and acceptable without any physical restrictions at loading and or discharging ports except the draft restrictions.<br><br>   a)     always afloat<br>   b)     ~~always afloat or around~~<br><br>in such safe berth, deck, wharf or anchorage as Charterers or their Agents or Shippers may direct a full and complete cargo of 55,000 metric tons (**10%** more or less in Owners option) of bulk Soyabeans sf about 48' WOG ~~in bulk/bagged~~ to be loaded **1 – 2 safe berth(s) / safe anchorage(s) 1 safe port South Brazil.** Shippers have the option of using a second safe berth /anchorage. The time for shifting between the two berths and anchorage or layberth to inner harbour and/or load berth shall count as laytime, but shifting expenses shall be for vessel's account.<br>**Any additional shifting(s), if required, to be for Charterers' account and time.**<br>Owners shall provide and install at their risk and expenses and on their time all that is required for safe stowage of the cargo bulk soyabeans according to local and international regulations.<br>The cargo shall not exceed what the vessel can reasonably stow and carry over and above her bunkers, apparel, stores, provisions and accommodation. The whole cargo shall be carried and stowed under deck. All cargo on board to be delivered. Cargo to be loaded stowed in vessel's **clear unobstructed main holds / hatches only, all being clean suitable and available for Charterers intended cargo and Owners confirm Vessel is suitable for grab discharge and Owners guarantee vessel can load the contractual quantity(ies) without requiring any bagging/strapping or otherwise securing.**<br><br>**Owners/Master to satisfy themselves on restrictions of loadable quantities with respect to load and discharge port/terminal restrictions.**<br><br>In case of different cargoes and/or grades, such cargo or grades shall be kept separate by natural separations only, unless otherwise expressly agreed between Owners and Charterers.<br>If loading bagged cargo, the number of bags signed for on Bills of Lading to be binding on vessel and Owners, unless error or fraud be provided. |
| Discharging Port(s) | 3.     Being so loaded, the vessel shall proceed within all convenient speed direct to:<br>**1-2 safe berth(s) / safe anchorage(s) 1 safe port North China, North of Shanghai (intention Dalian).**<br><br>All discharging port(s) to be in direct to geographical rotation and only enroute without considerable deviation. Owners have the right to stop the vessel enroute ~~Singapore~~ for bunkers, Owners minor matter in Owners time and expenses.<br><br>Which in case of named port(s) Owners acknowledge as safe and suitable for this vessel, and there discharge the cargo<br>   a)     always afloat<br>   b)     ~~always afloat or around~~ |

1

| | |
|---|---|
| | in such safe berth, deck, wharf or anchorage as Charterers or their Agents or Receiver may direct. Receivers have the option of using a second safe berth/anchorage. The time for shifting between the two berths shall count as laytime, but shifting expenses between 1st and 2nd berth/anchorage(s) shall be for vessel's account. **Any additional shifting(s), if required, to be for Charterers' account and time.** |
| **Freight** | 4.    The freight agreed under this Charter Party shall be:

**USD 109.75 per metric ton F.I.O.S.T. basis 1 / 1. (Loading Sao Francisco Do Sul)**

**USD 108.25 per metric ton F.I.O.S.T. basis 1 / 1. (Loading Santos)**

**USD 111.25 per metric ton F.I.O.S.T. basis 1 / 1. (Loading Paranagua)**

**USD 111.25 per metric ton F.I.O.S.T. basis 1 / 1. (Loading Rio Grande)**

Per ton of 1,000 kilos on nett Bill of Lading weight. The full freight is deemed earned upon completion discountless and non refundable whether vessel and/or cargo lost or not lost. Any advance of freight to Owners made in order to obtain "Freight Prepaid" Bill(s) of Lading is not recoverable from the Shipowners, if vessel and/or cargo is lost by reason or as a consequence of any of the excepted perils as listed in Article IV, Paragraph 2, of the Hague-Visby Rules.

The freight shall be paid to: Owners' nominated bank account
**To be advised.** |
| **Payment of Freight** | As follow: 95% of the freight **payable**, less commissions is to be paid, ~~cap and estimated loadport dispatch is to be paid~~ within three banking days after completion of loading and ~~after~~ signing / releasing Bill(s) of Lading marked "FREIGHT PREPAID" ~~AS PER CHARTER PARTY~~ AND "CLEAN ON BOARD" **same to be released against copy of Charterers ocean freight payment bank slip.** |
| **Release of Bill(s) of Lading** | Freight prepaid Bill(s) of Lading to be issued and released upon receipt by Owners of a telex or fax advice from Charterers bank confirming that 95% freight has been remitted to Owners' account. The balance of the freight is **payable to be settled together with demurrage/despatch** within 30 days after completion of discharge and duly presentation of ~~final freight account including demurrage and despatch calculations supported by~~ copies of **relevant documents, including the Notice of Readiness and Statement of Facts.** |
| **Taxes, Dues** | **Taxes, dues at loading: See Rider Clause 32.**
**Taxes, dues at discharging: See Rider Clause 42.** |
| **Loading and Discharging** | 5.     **Loading terms: See Rider Clause 34.**
        **Discharging terms: See Rider Clause 44.** |
| **Charterers Representatives** | Shippers and/or receivers and/or Charterers representative have the right to be on board the vessel during loading, discharging or lightening for the purpose of inspecting the cargo and/or weighing. |
| **Overtime** | Charterers and Owners are allowed to work overtime; such expenses shall be for account of the party ordering same. If ordered by Port Authorities, overtime shall be for Charterers' account. Overtime services rendered by ship's crew shall be in all cases for Owners' account. |
| **Opening/Closing of Hatches** | All openings and closings are to be carried out by vessel's crew at Owners' time and expenses, provided same is permitted by port authorities and local regulations. |
| **Laydays** | 6.     At port of loading, laytime shall not count before **8.00 am** on the **28th March 2008** and in any case not before the date notified by the ~~10~~ 7 days notice as per **Rider Clause No. 33.**
Should the vessel fail to tender a valid notice of readiness as **per Rider Clause No. 35.** before 9.00 hours on the **6th April 2008.** It is understood that laycan to commence at 0001 on first layday and end 2359 on the last cancelling day which local time to apply.

Should the Owners anticipate that, despite the exercise of due diligence, the vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date. Such option must be declared by the Charterers within 48 running hours after the |

2

| | |
|---|---|
| | receipt of the Owners notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date. |
| **Pre-arrival Notices** | 7.    **Pre-arrival notice loading: See Rider Clause 33.**<br>      **Pre-arrival notice discharging: See Rider Clause 43.** |
| **Laytime** | 8.    **Laytime at loading: See Rider Clause 35/36.**<br>      **Laytime at discharging: See Rider Clause 45/46.** |
| **Demurrage** | 9.    Demurrage is payable by Charterers at the rate of USD **60,000-80,000** per day ~~of 24 consecutive hours~~ or pro-rata working time saved both ends ~~at discharge port~~ and **actual amount to be declared upon vessel nomination.** |
| **Despatch** | Owners shall pay to Charterers dispatch money for laytime saved in loading/discharging at the rate of **USD 30,000-40,000** per day ~~of consecutive hours~~ or pro-rata and **actual amount to be declared upon vessel nomination.**<br><br>**Charterers' agent both ends.** |
| **Seaworthy Trim** | 10.    It is Master duty to supervise the loading, stowage and discharge of the cargo in order to ensure the vessel is left in seaworthy trim and stability between berths and ports. Time used for placing vessel in seaworthy trim shall count as laytime or time on demurrage. |
| **Fumigation** | 11.    Charterers' have the option to fumigate part or all of the cargo at the load/discharge port or during transit at their expense. Fumigation to be carried out as per local practice. Crew to stay on board during fumigation unless ordered to go ashore by port authority as customary. ~~Owners to allow Charterers 24 hours free time for fumigation.~~ If vessel will be ordered for fumigation at loading and/or discharging port, all time used to be count as laytime, and fumigation to be done by Shipper/Charterer/Receivers at their own time/cost/risks. If ordered by port authority crew ashore accommodation/meal to be always for Charterers' account. |
| **Light and Gear** | 12.    Whenever required, vessel shall supply free use of lights as on board but sufficient to carry on night work. ~~Provided described as geared, vessel shall have valid cargo gear / winch certificates on board and, whenever required, shall supply free use of such cargo handling gear, in good working order, with the necessary motive power, and of runners ropes and slings as on board.   Shore hands shall be used to drive the gear, at Shippers/Charterers/Receivers account, but always under Master's supervision.   Any time actually lost on account of breakdown of vessel's gear shall not count as laytime or time on demurrage and any stevedores 1ˢᵗ Shift standby time charges incurred thereby shall be for Owners' account.~~ |
| **Agencies** | 13.    At loading port the vessel shall be consigned to the agents nominated by Charterers and Owners to appoint them, paying customary fees.<br>At discharging port the vessel shall be consigned to the agents nominated by Charterers and Owners to appoint them, paying customary fees.<br>~~Owners to put agents in funds timely, failing which Owners to be responsible for any delay arising therefrom provided the agents full style and bank details have been furnished to Owners at least 3 banking days before vessel arrive.~~<br>Owners have the right to appoint their own protection agents at both ends. |
| **Extra Insurance** | 14.    To be for **Charterers** account.<br><br>**OAP if any to be for Charterers' account.** |
| **Brokerage** | 15.    A brokerage of **1.25** per cent each on the gross amount of freight, deadfreight and demurrage earned, is due to: MERIDIAN SHIPPING PTE LTD, SINGAPORE. |

WORKING COPY

| | |
|---|---|
| **Address Commission** | 16.    An address commission of **3.75** per cent on the gross amount of freight, deadfreight and demurrage earned is due to Charterers and is deductible from freight, deadfreight and demurrage. |
| **Law and Arbitration** | 17.    This contract shall be subject to English law. Any dispute arising out of the present contract shall be referred to the exclusive jurisdiction of the High Court of Justice in London, to which each party hereby irrevocably agrees to submit, unless the amount in dispute does not exceed US$35,000.00, or unless the parties mutually agree in writing to refer the dispute (or any part thereof) to arbitration, in which cases such dispute shall be referred to the final arbitratement of two Arbitrators carrying on business in London who shall be engaged in the Shipping and/or Grain Trades, one to be appointed by each of the parties, with power to such Arbitrators to appoint a third Arbitration in case of disagreement between them. Their decision, or that of any two of them, shall be final and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The appointment of an Arbitrator by one party shall be notified in writing to the other party who must nominate his Arbitrator by one party shall be notified in writing to the other party who must nominate his Arbitrator within seven clear days after such notification, failing which the Arbitrator already nominated shall act as sole Arbitrator and his award shall be final and binding on both parties, as if he had been appointed by consent. The right of both parties to refer any disputes to the High Court or where applicable to arbitration shall cease unless a writ has been issued, or an arbitration agreement has been made and an arbitrator appointed within twelve months after the date of completion of discharge or, in case of cancellation or non-performance, twelve months after the canceling date as per Clause 6 or after the actual date of cancellation whichever is the later. Where this provision is not complied with, the claim shall be deemed to be waived and absolutely barred. **Arbitration in London and English law to apply.** |
| **Bill of Lading** | 18.    Charterers or Charterers nominated agents are authorized to sign/release bills of lading marked "freight prepaid" and "clean on board" or in Charterers' option "freight payable as per c/p". "Clean on board" bill(s) of lading to be released immediately upon receipt by Owners of a telex or fax advice from Charterers bank confirming that 95% freight has been remitted irrevocably to Owners' account. |
| | Only clean Mate's receipt and Bills of Lading to be issued under this Charter Party and Master has the right to reject cargo for which clean Mate's receipts / **"clean on board" Bill(s) of Lading** cannot be issued **but same not to be unreasonable. If there are remarks on the Mate's Receipt, clean Bills of Lading only to be issued against Charterers' L.O.I. in Owners' format.** |
| | Bill(s) of Lading to be in conformity with mate's receipts but quantity to be as per draft survey / shore weighment scale certificates as issued by surveyor. |
| | **Charterers or Charterers nominated agents are hereby authorized to sign/release Bill(s) of Lading on Master's/Owners' behalf in strict conformity with Mate(s) Receipt. Mate(s) Receipts quantity to be determined as per the custom of the port.** |
| | **Charterers have the option to issue second set switch/split bills of lading in Singapore by Owners' agent against an L.O.I. in Owners' P & I Club format but always need Owners' confirmation to issue and release same.** |
| | **Should original Bill(s) of Lading not be at the discharge port upon vessel's arrival, Master to discharge the entire cargo against Charterers' single L.O.I. in Owners' P & I Club format.** |
| **Relet** | 19.    Charterers have the right to re-let all or part of this Charter Party, the remaining responsible for its due fulfillment. |
| **Deviation** | 20.    Deviation in saving or attempting to save life or property at sea or for bunkering purpose or any other reasonable deviation shall not be deemed an infringement of this Charter Party and the Owners shall not be liable for any loss or damage resulting therefrom. |
| **Lien and Cesser Clause** | 21.    The Owners shall have a lien on the cargo for freight, deadfreight, demurrage, and general average contribution due to them under this Charter Party. |
| | Charterers' liability under this Charter Party is to cease on cargo being shipped except for payment of freight, deadfreight, and demurrage and except for all other matters for in this Charter Party where the Charterers' responsibility is specified. |

| Penalties | 22.  Penalty for non-performance of this charter shall be limited to the proved damages caused to one of the parties. |
|---|---|
| **Responsibilities and Immunities** | 23.  1) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924, as amended by the Protocol signed at Brussels on February 23rd 1968 (the Visby Protocol) shall apply to this Contract and to any Bill of Lading issued hereunder.<br>    2) The Owners shall in no case be responsible for loss of or damage to cargo howsoever arising prior to loading into and after discharge from the vessel.<br>    3) Save to the extent otherwise in this Charter Party expressly provided, neither party shall be responsible for any loss or damage or delay or failure in performance hereunder resulting from Act of God, war, civil commotion, quarantine, strikes, lock-outs, arrest or restraining of prince, rules and peoples or any other event whatsoever which cannot be avoided or guarded against.<br>    4) If any provision of this Charter Party or of any Bill of Lading issued pursuant to it shall be repugnant to or inconsistent with the Hague-Visby Rules as mentioned above, such provision shall be void to that extent, but no further. |
| **General Ice Clause** | 24.  **Port of Loading**<br>    a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this charter shall be null and void.<br>    b) If during the loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has the liberty to do so with what cargo he has no board and to proceed to any other port or ports with option of completing cargo for Owner's benefit to any port or ports including port of discharge. Any part cargo thus loaded under this charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quality delivered (in proportion if lumpsum), all other condition as per charter.<br>    c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be liberty either to lead the part cargo at the port and fill up elsewhere for their own account as under section b) or to declare the charter null and void unless Charterers agree to load full cargo at the open port.<br>    d) This Ice Clause shall not apply in the Spring.<br><br>    **Port of Discharge**<br>    a) Should ice (except in the Spring) prevent vessel from reaching port of discharge, Receivers shall have the option of keeping the vessel waiting until the reopening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.<br>    b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.<br>    c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion. |
| **Amended Centrocon Strike Clause** | 25.  If the cargo cannot be loaded or if the vessel cannot proceed to the loading berth by reason or as a consequence of Riots, Civil Commotions or of a Strike or Lockout of any class of workmen essential to the loading of the cargo, or by reason of obstructions or stoppages beyond the control of the Charterers caused by Riots, Civil Commotions or a Strike or Lockout on the Railways, or in the Docks, or if the cargo cannot be discharged or if the vessel cannot proceed to the discharging berth by reason or as a consequence of Riots, Civil Commotions or of a Strike of Lockout of any class of workmen essential to the discharge, the time for loading or discharging, as the case may be, shall not count during the continuance of such causes, provided that a Strike or Lockout of the Shippers' and/or Receivers' men shall not prevent demurrage accruing if by the use of reasonable diligence they could have obtained other suitable labour at rates current before the Strike or Lockout. During the continuance of any of the aforementioned causes, time shall not count as laytime or time on demurrage, and no claim for damage or demurrage shall be made by the Charterers / Receivers of the cargo, or Owners of the vessel. For the purpose, however, of settling dispatch money accounts, any time lost by the vessel through any of the above causes shall be counted as time used in loading or discharging, as the case may be.<br><br>If berthing, loading, discharging is prevented or delayed by or as a consequence of any industrial dispute or union action arising from the terms and conditions of employment of the crew, any time lost by reason thereof shall not count during the continuation of such prevention or delay and the Owners shall reimburse Charterers / Shippers / |

| | |
|---|---|
| | Receivers for any proven damages and/or directly related expenses caused thereby. |
| **General Average and New Jason Clause** | 26.   General average shall be adjusted in London according to the York/Antwerp Rules, 1974, as amended 1994, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:<br><br>" In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage special charges incurred in respect of the goods.<br>If a salving ship is owned or operated by the carrier, salvage shall be paid for as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery". |
| **Both to Blame Collision Clause** | 27.   If the liability for any collision in which the vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:<br>"If the Ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier hereunder will indemnity the carrier against all loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other or non-carrying ship or her owners to the owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier. The foregoing provision shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact. |
| **War Risks ("Voywar 1950")** | 28.   1) In there Clauses "war risks" shall include any blockade or any action which is announced as a blockade by any Government or any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.<br>      2) If at any time before the vessel commences loading, it appears that performance of the contract will subject the vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter of telegram dispatched to the Charterers, to cancel this Charter.<br>      3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the vessel shall have liberty to carry out other cargo for Owner's benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out for or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.<br>      4) If at the time the Master elects to proceed with part or full cargo under item 3, or after the vessel has left the loading port, or the last of the loading ports, if more than one, it appears that further performance of the contract will subject the vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have dispatched a request by telegram to the Charterers for the nomination of a substitute discharging port, the Owner shall be at liberty to discharge the cargo at any safe port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment. In the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading, or to which the vessel may be ordered pursuant thereto.<br>      5) a) The vessel shall have the liberty to comply with any direction or recommendation as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other wise whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port) given by any Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or by any comities or person having under the terms of the war risks insurance on the vessel, the right to give any such directions or recommendations. If, by reason of or in compliance with any such direction or recommendation, anything is done or is not done, such shall not be deemed a deviation.<br>      b) If, by reason of or in compliance with any such directions or recommendations, the vessel does not |

WORKING COPY

|  | proceed to the ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfillment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the vessel may have been ordered pursuant thereto.<br><br>6) All extra expenses (including insurance costs) involved in discharging cargo at the loading port or in reaching or discharging the cargo at any port as provided in item 4) and 5(b) hereof shall be paid by the Charterers and/or cargo Owners, and the Owners shall have a lien on the cargo for all moneys due under these items. |
|---|---|
| **I.S.M. Clause** | 29.   From the date of coming into force of the International Safety Management (I.S.M.) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the I.S.M. Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (D.O.C.) and the Safety Management Certificate (S.M.C.) to the Charterers. Except as otherwise expressly provided in this Charter Party, loss, damage, expenses or delay caused by the failure on the part of either the vessel, the Owners or "the Company" (as defined by the I.S.M Code) to comply with the I.S.M. code shall be for the Owners' account. |
| **Hatch Water-Proof Test** | 30.   The Charterers have the privilege of ordering a hatch waterproof test (hose test or chalk test) prior to commencement of loading under this charter. Time actually lost for such test, if any, to count as laytime and costs to be for Charterers' account. The Master to provide every facility to the Charterers and their surveyor to carry out such test. |
| **Rider Clauses, Appendix "A" and Appendix "B"** | 31.   Rider clauses 32. to 57. inclusive, as attached, are hereby deemed to be fully incorporated in this Charter Party and to form part of the same. |

*The Owners:*                                                                                     *The Charterers:*

7

WORKING COPY

## RIDER CLAUSES (FOR LOADING)

| | |
|---|---|
| **Taxes, Dues at Load** | 32.   All charges. Taxes and/or dues levied on the cargo at any loading port shall be for Charterers'/Shippers' account, but where all or part of the port charges or any other expenses are customarily paid by the vessel ~~or calculated per ton of cargo,~~ then same to be for Owners' account. Any other charges, taxes and/or dues levied on the vessel and/or freight shall be for Owners' account. |
| **Vessel's Position, Pre-arrival Notice(s) at Load** | 33.   Master and/or Owners shall give notice on fixing and ~~10/7/5/3/2/1~~ day(s) notice of vessel's expected readiness to load to:<br><br>   (a)  Charterers – AGRENCO MADEIRA COMERCIO INTERNACIONAL LTD<br>   (b)  Charterers' agents – TO BE ADVISED<br><br>Master and/or Owners shall give them regular advice of any change in vessel's position. |
| **Loading Rate/Terms** | 34.   Cargo shall be loaded and/or stowed free of expenses to the Owners **10,000 metric tons per weather working days, Saturdays noon, Sundays, Holidays excluded even if used.**<br>In case of bulk cargo, same to be spout-trimmed only and any other trimming than spout-trimming or loading is to be for Owners' account and time. Loading, stowing and trimming shall be under Master's direction and responsibility. Stevedores are to be considered as Master's servants at load and discharge port(s). ~~It is Master's duty to ensure that only cargo in apparent good order and condition is taken on board the vessel for which clean Mate's Receipts and clean Bill(s) of Lading can be issued. It is Master's right and duty to reject and refuse loading, or if already on board to order discharge of any cargo not complying with this stipulation.~~ |
| **Laytime at Load** | 35.   At load port(s), N.O.R. to be tendered ~~during office hours~~ between 0800hrs to 1700hrs Monday to Friday and **between** 0800hrs to 1200hrs **on** Saturday. If one of these days is a local holiday at the port then NOR will be deemed tendered at 0800hrs on the next working day. At load ~~and discharge~~ port the master has the right to tender NOR WIPON, WIBON, WCCON, WIFPON. If after berthing the commencement of loading~~/discharging~~ is delayed due to vessel not being ready to load~~/discharge~~ then the time actually lost from the time of berthing until vessel is ready to load~~/discharge~~ shall not count as laytime<br><br>At loadport laytime shall commence 0800 hours next working day ~~to count 12 hours~~ after notice of readiness to load has been validly tendered. Time used before commencement of laytime shall not count even if used. Laytime shall not count between **1200 hrs Saturday until 0900 hrs on Monday and from** 1700 hrs on a day **prior to** ~~preceding~~ a holiday until 0900 hrs on the next working day even if used. ~~not to count between 1700 hours on days preceding a holiday, even if used. Only when the loading berth is unavailable and the vessel is prevented from proceeding there for this reason alone, master may warrant the vessel has first been inspected that she is in all respect ready to load and may tender notice of readiness from any usual writing place, whether in port or not, whether in free pratique or not, whether customs cleared or not.~~<br>~~When master has tendered notice of readiness to load from a waiting place and vessel is subsequently found unready in application of the above provisions or fails to obtain any pass as described as above on the first inspection, Laytime or time on demurrage shall not count from the time the vessel is rejected until the time she is accepted. Additionally, any time lost on account vessel's obtaining free pratique or customs clearance shall not count as laytime or time on demurrage.~~<br>~~At all ports any time lost shifting from waiting place to berth shall not count as laytime or as time on demurrage. Laytime at 2nd load port to start 12 hours upon vessel arrival.~~<br><br>~~If documents or cargo are not ready upon vessel's arrival, detention, if any, not to count until 8 hours have passed after vessel tendering NOR to the Shippers.~~ **As per main terms.** |
| **Hold Cleanliness** | 37.   Vessel's holds to be clean, dry odourless, properly swept, cleaned and dried and in all respect ready to receive the intended cargo. It is understood that the vessel is free of all insect eggs or larvae, including live or in dispose khapra beetles.<br>   On arrival at loadport, vessel's holds to be clean, odourless, free from residue of previous cargoes and free from rust scales, to the satisfaction of shipper's surveyor. Should vessel not pass surveyor's inspection, time not be begin counting until all holds eventually passed. ~~Should vessel failed three consecutive inspections Charterers have the option of cancelling this Charter Party.~~ Actual time lost not to count as laytime. |

**WORKING COPY**

| Ventilation | 38. Ship to be fully equipped for the natural ventilation of the contract cargo. Master to secure adequate and efficient ventilation during the voyage to avoid any damage to the cargo. ~~Vessel will be held responsible for any damage to the cargo caused by water through ventilation and leakages of water and / or oil from pipes and/or valves, etc on board, due to wear and tear of the above, or any other cause.~~ |
| Dunnage | 39. All dunnage, kraft papers and separation materials if any required, then same for Owners' account. |
| Tally | 40. Shipside tally if any to be for Owners' account and shore-side tally if any to be for Charterers / Shippers / Receivers account. Owners have the option of using crew for onboard tallying. |
| Leave Loading Berth | 41. ~~If vessel is ordered to leave the loading berth, the shifting out and in back to load berth is for Owners account but time so used not to count as laytime.~~ |

9

WORKING COPY

| | RIDER CLAUSES (FOR DISCHARGING) |
|---|---|
| Taxes, Dues at discharge | 42.    All charges, Taxes and/or dues levied on the cargo at any discharging port shall be for Charterers/Shippers account, but where all or part of the port charges or any other expenses are customarily paid by the vessel ~~or calculated per ton of cargo~~, then same to be for Owners account. Any other charges, taxes and/or dues levied on the vessel and/or freight shall be for Owners' account. |
| Vessel's Position, Pre-arrival Notice(s) at Load | 43.    Upon leaving the last or sole loading port, Master to cable or telex E.T.A. at the first or sole discharging port or discharging area, if the port has not yet been declared, to<br><br>(a) Charterers – **AGRENCO MADEIRA COMERCIO INTERNACIONAL LTD**<br>(b) Charterers' agents – **TO BE ADVISED**<br><br>Also stating date of sailing from last or sole loading port, the quantity of cargo loaded, the cargo breakdown per hold, arrival draft at the first or sole discharging port or discharging area, if the port has not yet been declared as well as length of vessel.<br>Such notice is to be followed up by ~~10/7/5/~~3 days notice of expected time of arrival at the first or sole discharging port or discharging area, if the port has not yet been declared, and final notice of E.T.A. 24 hours before arrival at the discharging port. Master and/or Owners shall give regular advice of any change in vessel's position.<br><br>~~Charterers to advise intended discharge port(s) 5 days prior passing Singapore and definite 1st discharge port to be declared within 5 days after sailing Singapore.~~ |
| Discharging Rate/Terms | 44.    **Cargo shall be discharged 8,000 metric tons per weather working days, Saturdays noon, Sundays, Holidays excluded, even if used.**<br>At disport N.O.R. to be tendered ~~during office hours~~ **between 0800 hours to 1700 hours Monday to Friday and between 0800 hours to 1200 hours on Saturday. If one of these days is a local holiday at the port, then N.O.R. will be deemed tendered at** ~~and time to count~~ **0800 hours on** the next working day.<br><br>Time from 1200 hours on Saturday until 0900 hours on Monday and from 1700 hours on a day prior to a holiday until 0900 hours on the next working day not to count even if used.<br><br>Owners guarantee that Vessel is suitable for grab discharge as far as a single decker can be. |
| Laytime at Discharge | 45.    ~~At discharge port laytime not to count from Saturday noon hours or 1700 hours prior holiday until Monday 0800 hours or 0800 hours on day after holiday even if used.~~<br>~~Laytime at 2nd disport to count upon vessel's arrival.~~<br><br>**At discharge port laytime to commence at 0800 hours next working day after Notice of Readiness to discharge has been validly tendered. Time used before commencement of laytime shall not count even if used.**<br><br>**At discharge port, the Master has the right to tender N.O.R. WIPON, WIBON, WCCON, WIFPON. If after berthing the commencement of discharging is delayed due to vessel not being ready to discharge then the time actually lost from the time of berthing until vessel is ready to discharge shall not count as laytime.** |
| Discharging Berth unavailable/2nd Discharging Port | 46.    ~~Only when the discharging berth is unavailable and the vessel is prevented from proceeding there for this reason alone, Master may warrant that she is in all respects ready to discharge and may tender notice of readiness from any usual waiting place, whether in port or not, whether in free pratique or not, whether customs cleared or not. When master has tendered notice of readiness to discharge from a waiting place and vessel is subsequently found unready, laytime or time on demurrage shall not count from the time the vessel is found unready until the time she is effectively ready to discharge. Additionally, any time lost on account of vessel's obtaining free pratique or customs clearance shall not count as laytime or time on demurrage.~~ |
| Lighterage | 47.    Lighterage and or lightening if any to be for Charterers' time and account at both ends. |

**WORKING COPY**

| Letter of Indemnity | 48.   In the case if original Bills of Lading are not at the discharge port prior to vessel's arrival, the Master/Owners are to discharge the entire cargo against Charterers' single Letter of Indemnity ~~or Receiver's bank guarantee~~ in Owners PNI Club format. |
|---|---|
| Special Provisions | 49.   ~~a) Charterers or their assignees are herewith authorized by Owners / Master to alter / indicate in the Bills of Lading the name of the discharging port(s), provided such port(s) is within the discharging area as per Clause 3. Further Owners / Master to authorize Owner's agent in Singapore to split and/or issue new Bills of Lading against Charterers' original Letter of Indemnity in owners PNI Club wordings, signed / stamped by Charterers. The first set of Bills of Lading will be sent back to Owners, when available against destroying, respectively returning of the Letter of Indemnity to Charterers.~~<br>    ~~b) In the event the vessel is arrested or attached at any time during the currency of this Charter Party, owners shall obtain the release of transship the vessel and her cargo from the arrest or attachment. If Owners fail to obtain the release of transship the cargo to destination with all cost to destination borne by Owners. Owners shall be deemed to be in repudiatory breach of this Charter Party. Charterers shall be entitled to claim all losses, damages and expenses arising from the Owners repudiatory breach.~~ |
| Leave Discharging Berth | 50.   ~~If vessel is ordered to leave the discharging berth, the shifting out and in back to discharge berth is for Owners account but time so used to count as laytime.~~ |
| Stevedore Damage | 51.   Stevedore damage at load or discharge port if any to be settled directly between Owners and Stevedores. Charterers try best to assist for settlement. |
| Confidential Clause | 52.   This fixture / negotiations to be kept strictly private and confidential and not to be reported in the market. |
|  | 53.   Owners warrant Vessel is suitable for the carriage of bulk soyabeans ~~maize in China~~ as per I.M.O. Regulations / Recommendations.<br><br>Vessel to have clear, unobstructed and easily accessible cargo holds.<br><br>Vessel's bulkheads to have no center line beams or bulkheads in any holds or hatchways. Vessel's bulkheads not to be horizontally corrugated. Vessel is suitable for discharge by Receivers grab/discharging equipment.<br><br>Performing vessel to be fully P & I covered and classed highest LLOYDS or equivalent throughout the duration of this voyage.<br><br>One self-trimming bulk carrier.<br>Wing tanks excluded, tweens and tankers rejectable.<br><br>Performing vessel to be fully H & M insured throughout the duration of the voyage.<br><br>Owners guarantee that all vessel's certificates are and will remain valid throughout the duration of the intended voyage.<br><br>**Cargo to be loaded in Vessel's clear/unobstructed main-holds only all being clean suitable and available for Charterers' intended cargo.** |
|  | 54.   **Max. LOA 225m and Max. 20 years,** Self-trimming single-deck bulk carrier, Mcgregor type hatchcovers. Fully Classed by member of IACS.<br>Protection and Indemnity by member of International Group ISM, ISPS certified (BIMCO Clause to be included in Charter Party).<br><br>**BIMCO ISPS Clause For Time Charter Parties**<br><br>(a) (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined |

by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

55.   Charterers to guarantee M/V **COSBULK TBN** as described to be fully workable, suitable and acceptable without any physical restrictions at loading and or discharging ports except the draft restrictions. ~~Owners/Master to satisfy themselves on restrictions of loadable quantities with respect to load and discharge Port/Terminal restrictions.~~

56.   Owners warrant that the vessel complies with the requirements of SOLAS 1974 and any amendments thereto including Chapter XI-2. Any costs, expenses and loss of time as a result of non-compliance to be entirely for Owners' account.

57.   ~~NABSA to apply where customary in Argentina or South Brazil grains port.~~

WORKING COPY

---

**VESSEL DESCRIPTION CLAUSE**
**REVISED JANUARY 1998**
**APPENDIX "A"**

---

MV FEARLESS 1
GEARLESS SINGLEDECK
SELF-TRIMMING BULKCARRIER ENGINE / BRIDGE AFT.
BUILT: 1997
FLAG: MARSHALL ISLANDS
CLASS: LLOYDS 100 A1 ESP + LMC UMS SHIP RIGHT
DEADWEIGHT: 73,427 METRIC TONS 13,765 M SW
HOLDS / HATCHES: 7 / 7
HATCH COVER TYPE: CHAIN DRIVEN SIDE ROLLING
CUBIC FEET GRAIN CAPACITY IN HOLDS: 1) 400.475.60
                                     2) 446.642.90
                                     3) 447.833.00
                                     4) 425.870.60
                                     5) 447.833.00
                                     6) 446.872.50
                                     7) 421.671.70
                                     TOTAL: 3.037.199
    HOLD DIMENSIONS: 1) 15.12M BY 12.00M
                         2-7) 15.12M BY 15.00M

  LOA: 224.97
  BEAM: 32.282M
  GT: 38.932
  NT: 24.348
  TPC: 67.75 FULLY LADEN IN SUMMER MARKS

DISTANCE FROM WATER LEVEL TO TOP OF HATCH COAMING ABOUT 15.00M(NO.7) LIGHT BALLAST / 16.70M (NO.1)
/ 13.33M HEAVY BALLAST (4 HOLDS FLOODED) KEEL TO HIGHEST POINT 47.44M WATER LEVEL TO HIGHEST POINT
40.50M LIGHT BALLAST / 39.30M HEAVY BALLAST.

13

WORKING COPY

EXHIBIT 2

 中远散货运输有限公司
**COSCO BULK CARRIER CO., LTD.**

TEL: 86 22 24206536   FAX: 86 22 24206610   E-MAIL:liuxinf@cosbulk.com

TO  :MERIDIAN SHIPPING PTE.LTD.
CC:AGRENCO MADEIRA COMERCIO INTERNATIONAL LTD.
FM  : COSCO BULK PANAMAX DEPT / LIUXIN
DATE : 01ST,JUL,2008
RE  : MV"FEARLESS I" / 5% OCEAN FREIGHT+D/D(REVISED)
CHTRS: AGRENCO MADEIRA COMERCIO INTERNATIONAL LTD.C/P 20.2.2008

COSCO BULK CARRIER CO., LTD.
OCEAN FREIGHT INVOICE

(UNIT:USD)

| PARTICULARS | DEBIT | CREDIT |
|---|---|---|
| GROSS FREIGHT(BASIS 1/1): | | |
| A. B/L FIGURE: | | |
|     59,159.261MT   x    USD109.75/MT | | 6,492,728.89 |
| LESS ADD+COMM           3.75% | 243,477.33 | |
| REMITTANCE | 5,843,446.01 | |
| DES AT LOADPORT | 39,675.580 | |
| DES AT DISPORT | 202,417.831 | |
| GROSS TOTAL: | 6,329,016.75 | 6,492,728.89 |
| BALANCE IN OWRS FAVOUR: | US$163,712.14 | |

BANK OF CHINA TIANJIN OCEAN PLAZA SUB-BRANCH
NO.1 OCEAN PLAZA HE BEI DISTRICT TIAN JIN CHINA
ACCOUNT NO:55904917608093014
SWIFT : BKCHCNBJ200
IN FAVOR OF: COSCO BULK CARRIER CO., LTD
REF: MV FEARLESS I- 5% OCEAN FRT PER C/P 20.2.2008

UPON EFFECTING THE PAYMENT, PLEASE SEND US BY FAX THE SWIFT COPY
OF SAME TO ENABLE US TRACE THE FUNDS ACCORDINGLY.

**THKS & B.RGDS**
**LIU XIN**

EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
COSCO BULK CARRIERS CO., LTD.                :          08 CV _____
                                             :
                   Plaintiff,                :
                                             :
        - against -                          :
                                             :
AGRENCO MADEIRA COMERCIO                      :
INTERNACIONAL LTD. a/k/a AGRENCO              :
MADEIRA COMERCIO INTERNACIONAL LDA :
                                             :
                   Defendant.                :
-----------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                      )      ss: SOUTHPORT
County of Fairfield   )

      Anne C. LeVasseur, being duly sworn, deposes and says:

      1.     I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

      2.     I have attempted to locate the Defendant, AGRENCO MADEIRA COMERCIO

INTERNACIONAL LTD. a/k/a AGRENCO MADEIRA COMERCIO INTERNACIONAL

LDA within this District. As part of my investigation to locate the Defendant within this

District, I checked the telephone company information directory, as well as the white and yellow

pages for New York listed on the Internet or World Wide Web, and did not find any listing for

the Defendant. Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendant.

     3.     I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

     4.     Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

     5.     This is Plaintiff's first request for this relief made to any Court.

### PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

     6.     Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Peterson, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold property of, for or on account of, the Defendant.

     7.     Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

8.    To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.    Further, in order to avoid the need to physically serve the garnishees/banks daily and repetitively, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service; and such service to be further deemed effective through the end of the next business day, provided that another service is made that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

–3–

## PRAYER FOR RELIEF TO TEMPORARILY SEAL CASE

11.    Upon information and belief, it is the practice of many law firms in the maritime bar to review the daily electronic docket sheet of the Southern District of New York for all maritime actions filed in the district and inform the defendant(s) named therein of any Ex Parte Orders of Attachment pending against them, thus defeating the purpose of the "Ex Parte" application.

12.    Upon information of belief, it is the practice of certain publications, specifically Tradewinds, to publish the names of defendants named in Ex Parte Orders of Attachment, thus further defeating the purpose of the "Ex Parte" application.

13.    Upon information and belief, Tradewinds has very recently publicized the names of parties in Rule B proceedings, the amount of the attachments, and other details of the actions, thereby further defeating the purpose of the "Ex Parte" application.

14.    The Courts within the Southern District of New York have an interest in preserving the efficacy of the Ex Parte Orders issued therein.

15.    The above interest supersedes the interest in maintaining a completely public docket, especially given that the public's access will only be limited temporarily until assets are attached and notice of attachment has been provided to the Defendant.

16.    Indeed, the public's access to Ex-Parte Orders of Maritime Attachment defeats their entire purpose, by depriving Plaintiffs of the element of surprise and potential allowing Defendant to re-route their funds to avoid the attachment, thus making the attachment remedy hollow.

17.    For the foregoing reasons, Plaintiff requests that the Court issue an Order temporarily sealing the court file in this matter, including the Verified Complaint and all other pleadings and Orders filed and/or issued herein until further notice of this Court or notification to the clerk that property has been attached.

18.    This request is narrowly tailored to meet Plaintiff's needs. Once property is attached, the case should be unsealed, as the interest underlying sealing the case will have been largely eliminated.

Dated:      July 31, 2008
            Southport, CT

_Anne C. LeVasseur_
Anne C. LeVasseur

Sworn and subscribed to before me
this 31st day of July, 2008

Notary Public

–5–